[No. 7,030.—In Bank.]

## SACRAMENTO & PLACERVILLE RAILROAD COMPANY *v.* THE SUPERIOR COURT OF SAN FRANCISCO.

RECEIVER — JURISDICTION — MORTGAGE — DEED OF TRUST — RAILROAD.—The Sacramento and Placerville Railroad Company executed a mortgage or deed of trust upon its property to two trustees, to secure the payment of the principal and interest of certain bonds, and it was provided that upon default in the payment of the principal of the bonds, or upon default for one year in the payment of the interest, the trustees should take possession of the property, and apply the net income to the payment of the principal and interest of the bonds.   Default having been made, an action was brought by the surviving trustee to enforce the lien and trust, and to obtain possession of the property, and a receiver was appointed.   *Held,* upon an application of the successor in interest of the mortgagor for a writ of prohibition, that the case came within the provision of subdivision 6, § 564 of the Code of Civil Procedure, and that the Court had jurisdiction to make the order.

APPLICATION for a writ of certiorari to the Superior Court of the City and County of San Francisco.   HUNT, J.

The facts are stated in the opinion.

*W. H. L. Barnes*, for Plaintiff.

No brief on file.

o

*Geo. Cadwalader,* for Defendant.

The Court below was authorized to appoint a receiver, by § 564 of the Code of Civil Procedure, subdivisions 1 to 6. The following authorities are cited to show the usages of Courts of Equity: (*American Bridge Co.* v. *Heidelbach,* 94 U. S. 798; *Davis* v. *Gray,* 16 Wall. 217; *Parkhurst* v. *Kinsman,* 2 Blatchf. 78; *Beecher* v. *Bininger,* 7 id. 170; *Lennox* v. *Latrobe,* Hemp. 225; Jones on Railroad Securities, § 468; *State of Maryland* v. *N. C. R. R. Co.* 18 Md. 194.

*Alfred A. Cohen,* also for Defendant.

The case comes within the provisions of either of subdivisions 1, 2, 5, and 6 of § 564 of the Code of Civil Procedure.

By the usages of Courts of Equity, a receiver is appointed upon a bill to foreclose a mortgage on a railroad, to receive the income of the mortgaged property, and apply it in satisfaction of the lien. (High on Receivers, §§ 376–8, 380; *Hopkins* v. *Worcester & Birmingham Canal,* Law R. 6 Eq. 437; *De Winton* v. *Mayor of Brecon,* 26 Beav. 533; Jones on Railroad Securities, § 474; *Des Moines Gas Co.* v. *West,* 44 Iowa, 23; *Meaden* v. *Sealey,* 6 Hare, 621; Kerr on Receivers, 53; *Lord Crewe* v. *Edleston,* 1 De Gex & J. 93; id. 109; *Crowe* v. *Halliday,* 2 Ridgway, 58; *Pots* v. *Warwick etc. Canal Co.* Kay's Rep. 147; *Davis* v. *Gray,* 16 Wall. 203; *Saylor* v. *Mocklie,* 9 Iowa, 209.)

MORRISON, C. J.:

This is a proceeding under the Code of Civil Procedure, (tit. 1, chap. 1, part iii) to review the action of the late District Court of the Fifteenth Judicial District, in appointing a receiver, and the only question for our consideration relates to the power of the Court below to make such appointment.

It appears, from the return of the writ of review issued out of this Court, that on the 14th day of March, 1864, the defendant (in the original suit) executed and delivered to Danforth N. Barney and Louis McLane a certain mortgage or deed of trust upon its property, to secure the payment of seven hundred

and fifty bonds of the denomination of one thousand dollars each, bearing interest at the rate of ten per cent. per annum. The indenture executed and delivered by the defendant, to secure the payment of the principal and interest of its bonds, contains the following clause: "And the parties of the second part, the survivor of them, and the heirs of such survivor, or their assigns, shall and may at all times after default shall be made in the payment of the principal of said bonds, or any part thereof, or when default for one whole year shall be made in the payment of the interest on any of said bonds, hold, occupy, possess, and enjoy, all and singular, the hereinbefore described lands, tenements, hereditaments, rights, privileges, and franchises, and other premises above granted, bargained, and sold, or mentioned, or intended so to be, with the appurtenances aforesaid, without the let, suit, or hindrance, molestation, or eviction of the said party of the first part, or their successors, or of any person or persons whomsoever lawfully claiming or to claim by, from, or under them; and that the said parties of the second part shall and may, by themselves, their officers, and agents, take, receive, and collect the income and profits of said railroad; first applying the same to the payment and discharge of all current expenses of the said railroad, and the needful repairs thereon; and next to the payment of all taxes that may be due the State of California and the counties through which the said railroad runs, and also the United States; and then to the payment of the interest and principal of said bonds, in such manner as they may deem proper.       *       *       *       *       *
And it is further covenanted, granted, agreed, and understood, by and between the parties to these presents, and the true intent and meaning hereof is, and it is hereby declared to be so, that until default be made in payment of the said principal sum and interest, or some part thereof, aforesaid, it shall and may be lawful to and for the party of the first part, their successors and assigns, to have, hold, possess, occupy, exercise, and enjoy, all and singular, the said lands, tenements, rights, franchises, and privileges, and the said property of all kinds— real, personal, and mixed—and other of the premises, with their appurtenances above bargained, sold, conveyed, and transferred in manner aforesaid, and to have, receive, and take all the rents,

issues, profits, gains, and advantages thereof to their own proper use and benefit."

We find in the mortgage,. or deed of trust, (it is immaterial whether it is a deed of trust or simply a mortgage) a power expressly conferred on the parties of the second part, in case default is made in the payment of the principal or interest of said bonds, to enter upon and take possession of the mortgaged property.

On the 26th of October, 1877, Louis McLane filed his complaint in the late District Court of the Fifteenth Judicial District, averring such default of the mortgagors, a demand and refusal to surrender to him the possession of the mortgaged property, or any part thereof, and praying the appointment of a receiver, etc. On the filing of such complaint, an order to show cause was made by the Court below, and on the 29th day of October, 1877, Louis McLane was appointed a receiver of the property embraced in the mortgage, with full power and authority to take and hold the same, and to exercise the powers over the property conferred by the mortgage or deed, until the further order of the Court, unless the defendant, within fifty days after the service on its agents or attorneys of a copy of the order, pay to the plaintiff the amount due on the unpaid bonds and coupons issued and secured by the mortgage. It is this order that the defendant complains of, and we are now called upon to review its legality on certiorari.

Had the Court below power and jurisdiction to make the order appointing Louis McLane a receiver of the property described in the mortgage? If such power was vested in the Court, its action must be sustained, however erroneous it may have been, for the writ brings up the proceedings for review only to the extent of inquiring into and determining the question of jurisdiction.

Section 564 of the Code of Civil Procedure provides that a receiver may be appointed by the Court in which the action is pending, in all cases where receivers have heretofore been appointed by the usages of Courts of Equity. This is not a proceeding to foreclose a mortgage, and to subject the mortgaged property to sale under the decree of the Court, but it is in the nature of a proceeding to enforce specific performance of the

terms and conditions of a mortgage; and we find numerous cases in the books in which Courts of Equity have exercised the jurisdiction complained of in this case. The case of *Shaw and others* v. *Norfolk County Railroad Co. and others*, 5 Gray, 162, is in point. In that case a railroad corporation conveyed all its property and franchise to three trustees by deed, conditioned to be void on payment of certain bonds issued by the corporation, and stipulating that the directors might, upon any breach of conditions, take possession and apply the net proceeds to the purpose of the trust, and it was held that it was competent for a Court of Equity to appoint a receiver. The Court there say: " But the bill may well be maintained by the plaintiffs upon another and different ground. By the contracts expressed in the deed of indenture a trust is created, to the due performance of which they have firmly bound themselves and their successors. In the discharge of the duties thus created and thus assumed, the possession, management, and control of the estates and interests conveyed to them may, and as it seems to us have already, become indispensable. For the due enforcement and regulation of such a trust, ample power is found in the jurisdiction of this Court as a Court of Equity; and the present bill is an appropriate course of proceeding to procure for that purpose the intervention and exercise of its authority. The bill prays for general relief, as well as for a specific decree in relation to the foreclosure of the equity of redemption. And upon the facts stated in it, and which upon the hearing were admitted to be true, we can see no reason why the plaintiffs ought not to be put in immediate possession of the mortgaged property, in order that the purpose for which the conveyance was made may be accomplished, and the trust created by it be properly executed. The defendants have neglected, and still neglect, to pay the interest which has accrued upon a large proportion of the bonds, which were duly issued, and which are held by the creditors of the corporation. These bond-holders are entitled to demand the money which has become due, and it is the duty of the trustees to make use of the discretionary power which was conferred upon them for the express purpose of insuring the payments to which the creditors should severally become entitled. To that end possession of the mortgaged

property is indispensable, and the plaintiffs ought therefore to have a decree by force of which they can obtain it.   *   *   * A decree properly prepared must therefore be entered in behalf of the plaintiffs, entitling them to have immediate possession of all the mortgaged property."

The case of *Ether Shepley et al.* v. *The Atlantic and St. Law-rence Railroad Co. et als.*, 55 Maine, 395, is also in point. This was the case of a mortgage executed by the railroad company to three trustees to secure the payment of certain bonds issued by it, and it was stipulated in the deed that if the company should at any time fail to pay the interest or principal of the bonds according to their tenor, the mortgagees might take the mortgaged property into their actual possession, manage and control the same, and apply the net income and proceeds thereof to the payment of such interest and principal.

It will be seen that the condition of the mortgage in the case in 55th Maine, was substantially the same as the condition in the mortgage in the case now under consideration; and it was there held that the Court had jurisdiction to decree a specific performance of the stipulation in the mortgaged property for the non-payment of the bonds.

In the case of the *American Bridge Co.* v. *Heidelbach*, 94 U. S. 798, a company, to secure the payment of its bonds, mortgaged its property and the rents, issues, and profits arising therefrom, with the provision that if there was default in paying the interest, the mortgagees might take possession of the property mortgaged, manage the same, and receive and collect all rents and claims due and to become due to the company. The Court, speaking of the power conferred upon the mortgagees by this instrument, says: " In this case, upon the default which occurred, the mortgagees had the option to take personal possession of the mortgaged premises, or to file a bill, have a receiver appointed, and possession delivered to him. In either case the income would thereafter have been theirs."

To the same effect is the law as stated in the text-books. We will refer only to one—the latest of these : "A Court of Equity has jurisdiction to order a specific performance of a stipulation in a railroad mortgage, authorizing the trustees to take possession of the mortgaged property for the non-payment of the bonds

secured, and a bill in equity is the proper form of proceeding to compel the company and its agents to deliver possession to the trustees." (Jones on Railroad Securities, § 401.)

But it is unnecessary for us to pursue this subject any further, or to cite any additional cases upon a point which seems to be perfectly well settled by authority.

We are of opinion that it was within the power and jurisdiction of the Court below to make the order complained of in this case, and, therefore, this writ should be discharged.

So ordered.

MYRICK, J., McKINSTRY, J., ROSS, J., SHARPSTEIN, J., and THORNTON, J., concurred.

[Mr. Justice McKEE, not having heard the argument, took no part in the decision of this case.]